HoustoN, special J.,
delivered the opinion of the court.
Mary F. Hickson, in contemplation of marriage with Henry Baldwin, made a conveyance of all her property to the plaintiff in error as trustee, to secure the same to her sole and separate use. In this conveyance it is provided that she “shall have full power and authority, by her direction in writing, under her hand, in the presence of one or more witnesses, to alienate, sell, dispose of or invest the negro slaves, debts, money or other property, in any way or manner she may think proper: and also to bequeath or devise the same by her last will and testament, with the power, from time to time, to appoint any other trustee or agent for the *267 management of the said negroes, debts and other property. It is further agreed by the parties to these presents that the said negroes and their increase shall remain in the possession of the said Mary F., or in the possession of any one she may choose, and that she may, by her directions in writing, as aforesaid or otherwise, appropriate as she may think proper, the hire or labor of the said negroes or their increase, and also the interest and profits arising from the monies due. her.., from time to time, and at all times hereafter, and that she may dispose of said negro slaves and their increase, and of her monies, debts due to her and other property, by any deed or deed of gift, or other mode of conveyance, according to her own wishes and pleasure.”
On the 22nd of March, 1847, the defendant lent to Mrs. Mary F. Baldwin four hundred and seventy dollars, and took her note for it, payable on the first of January, 1848, reserving on its face, ten per eent interest; and on the same day, Mrs. Baldwin executed to defendant, a mortgage upon the slave in controversy, to secure the payment of the note. To this mortgage there was no attesting witness. "When the note fell due, seventy dollars and some interest were paid upon it. A new note was taken for four hundred dollars, payable in six months, and defendant sent the mortgage to Mrs. Baldwin, with the request that she execute another in its place, which, however, was declined by Mrs. Baldwin.
In 1850, the last note not being paid, and Mrs. Baldwin still retaining the mortgage in her possession, and refusing to execute a new one, Mrs. "White filed a bill in the chancery comt at Nashville, for discovery, to have the mortgage produced and delivered up, and for its foreclosure for the payment of the note. This bill was *268 dismissed by tlie chancellor -upon the ground that complainant was seeking the aid of the court to enforce an illegal contract.
After this, the defendant got possession of the slave, which is one of the slaves conveyed in the trust deed to the plaintiff and was about to sell him under the mortgage, when this suit in replevin was brought for the negro. There was a trial by jury in the circuit court »of Eranldin, a verdict for defendant, a motion for a new trial, and in arrest of judgment,, which being overruled, the plaintiff appealed to this court.
The court charged the jury, “that the Trustee in the ante-nuptial settlement had the right of possession to the personal estate described in the settlement, against all persons except Mrs. Baldwin, and such persons as might rightfully claim under her. That a mortgage executed by Mrs. Baldwin would be good as between her and the mortgagee and her trustee, although without attesting witnesses.” It is insisted by the counsel of plaintiff that this part of the charge is erroneous, because Mrs. Baldwin had no power under the marriage settlement, to execute the mortgage. We do not think so. Under the marriage settlement, she has power, “ by her directions in writing, under her hand, in presence of one or more witnesses to alienate, sell or dispose of” her property; which means that her directions, so declared, shall authorize the trustee to sell the property. She has also the power “to bequeath or devise the same by last will and testament,” and she also has power “to dispose of said negro slaves and their increase, and of her monies, debts due to her and other property, by am/y deed or deeds of gift or any other mode of cormeyance according to her own wishes and pleasure.” A more unlimited power *269 could not be well conceived of or described. She retained all tbe powers of a fevie sole, as ■ to the disposition of her property. In our view of the case we do not perceive any repugnance between the first and last provision of the settlement. One is a mode of conveying her property by directions to her trustee, and the other is by her own conveyance. By the one her directions are to be in “ writing, under her hand, in the presence of one or more witnesses,” and by the other, “any mode of conveyance according to her own wishes and pleasure.” But if we thought that there was any inconsistency or repugnance in these clauses, still it is clear, that taking the whole instrument together, Mrs. Baldwin retained the power to dispose of her property as she may choose, and having this unrestricted power to sell or dispose of by deed, deeds of gift or by any other mode, she had power to execute the mortgage.
The court also charged the jury that the matter in controversy was not to be regarded as res jud/iccuta, because, in the chancery court, the defendant was merely repelled and the question here presented was not decided, that she had the right to defend the mortgage, notwith-. standing the decree in chancery, and the fact the ten per cent is mentioned in the mortgage. It is also insisted by plaintiff’s counsel that this is erroneous.
The decree in the chancery court recites the facts and states that “the mortgage, although brought into court by the defendant, yet being brought at the instance of complainant, and with a view that it shall be specifically executed for complainant’s benefit, must be considered as having been brought forward by complainant, and the complainant must be regarded under this aspect of the bill as seeking the aid of the court upon an illegal con *270 tract. It is therefore ordered, adjudged and decreed that the bill be dismissed.” The bare recital of this language of the decree, shows, beyond any sort of controversy, that Mrs. "White was repelled from the chancery court, upon the ground of the illegality of the contract, for the enforcement of which she was seeking the aid of the court. She was not heard in court, but simply re]5elled, and the matters in controversy in this suit are not res judicata.
The case is then presented in this only remaining aspect: Mrs. Baldwin, the plaintiff, in reality, so far as the property sued for is concerned, borrowed four hundred and seventy dollars of Mrs. "White, and gave her note, bearing interest at the rate of ten per cent, upon its face; and executed a mortgage upon one of her slaves, to secure the re-payment of the money, and she brings this suit against Mrs. "White, who has the slave in possession, proceeding to sell under the mortgage, to recover the slave from her, without having paid, or offered to pay, the amount of money borrowed, with legal interest. And we think the case falls within the principles laid down in the cases of Allen vs. Dodd, 4 Humph., 132-134; and of Yerger vs. Rains, 4 Humph., 259-267. The case would be very different, had Mrs. Baldwin paid the money really due, or were she to file a bill for the slave, offering or tendering the money borrowed with legal interest.
The court will not lend its aid to either party, but will leave them where it finds them.
"We see no error in the finding of the jury, or in the charge of the court, and we therefore affirm the judgment.